

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,      )
                                               )
               Respondent,       )
                                               )
v.                                           )       No.  SC94503
                                               )
DEMETRICK TAYLOR,       )
                                               )
               Appellant.        )

APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Jimmie M. Edwards, Judge

*Opinion issued August 4, 2015*

Demetrick Taylor appeals from a judgment convicting him of one count of possession of a controlled substance, under section 195.202,[1] and imposing a sentence of 16 years in prison, as a prior and persistent drug offender.  On appeal, Mr. Taylor claims the trial court abused its discretion by excluding testimony from a witness to Mr. Taylor's arrest and violated his due process right to allocution during his sentencing hearing by announcing the sentence the trial court intended to impose before Mr. Taylor had an opportunity to present mitigating evidence.  Because the witness's testimony was not relevant as a direct observation of the crime or surrounding circumstances, did not contradict the officers' testimony, and was not proper evidence to impeach the officers' credibility, the trial court did not abuse its discretion by excluding the witness's

---

[1] All statutory references are to RSMo Supp. 2014, unless otherwise indicated.

testimony. When Mr. Taylor was heard on his motion for a new trial, the trial court received mitigating evidence, and Mr. Taylor does not show that the court did not consider such evidence in determining Mr. Taylor's sentence. Accordingly, the trial court did not plainly err in deciding Mr. Taylor's sentence before providing him an opportunity to present mitigating evidence at the sentencing hearing. The trial court's judgment is affirmed.

## Factual and Procedural Background

On January 25, 2012, at 1:19 a.m., Officer Kristopher Clark and Officer Daniel Chamblin were riding in a marked patrol car when they saw a man walking down a sidewalk looking into parked vehicles. The officers believed the man was checking the vehicles for valuables to steal. The officers saw no one else on the street. When Officer Clark turned the patrol car's mounted spotlight on the man, the man stopped walking and turned his head toward the patrol car. Due to previous encounters, both officers recognized the man as Demetrick Taylor and believed he had active warrants for his arrest.

Officer Clark parked the car, and both officers walked toward Mr. Taylor. When the officers got within five to ten feet of him, Mr. Taylor ran away. The officers chased Mr. Taylor on foot through a vacant lot. Both officers had their flashlights aimed toward Mr. Taylor's hands to see if he possessed a weapon or contraband. Officer Clark was shouting "Stop, police." Officer Chamblin saw Mr. Taylor reach toward his waistband while running through the lot and make a throwing motion, but Officer Chamblin did not see anything drop. After an approximate 30-second chase, Mr. Taylor came to a tall

chain-link fence at the back of the lot. Mr. Taylor attempted to climb the fence, and as he was doing so, both officers saw Mr. Taylor take an object from his waistband and throw it over the fence. Officer Chamblin grabbed Mr. Taylor as he was throwing the object, which the officer saw was a plastic bag. Officer Clark, who had been trailing shortly behind Officer Chamblin, then reached the fence and illuminated Mr. Taylor with his flashlight. The officers were then able to take Mr. Taylor to the ground and handcuff him.

Immediately after handcuffing Mr. Taylor, Officer Chamblin climbed over the fence into the adjacent residential yard to retrieve the thrown object. Officer Chamblin did so immediately because he was afraid that dogs in the yard might destroy the evidence. He retrieved a large clear plastic bag that contained nine smaller individual bags of what appeared to be crack cocaine. Subsequent testing confirmed that the bags contained a total of 1.78 grams of crack cocaine.

Both officers escorted Mr. Taylor to their patrol car and placed him in the rear of the car. Officer Chamblin then obtained consent from the owner of the yard where the bag was thrown to further search the yard. He did not find any other drugs. At the same time, Officer Clark investigated the parked vehicles to see if any had been vandalized. None of the vehicles appeared to be broken into, but one vehicle had its door open. That vehicle's owner, George Ford, exited a nearby house and approached the vehicle and Officer Clark. Officer Clark asked Mr. Ford if he could search the vehicle to see if anything had been stolen. No items appeared to be missing from the vehicle. At 1:34 a.m., Officer Clark checked whether Mr. Ford had any outstanding warrants, as was usual

3

police protocol. Officer Chamblin did not recall speaking to Mr. Ford or checking to see if he had any warrants. Both officers left the neighborhood at approximately 1:39 a.m.

Mr. Taylor was charged, as a prior and persistent drug offender, with one count of possession of a controlled substance, pursuant to section 195.202. During his trial, held on May 22 and 23, 2013, Mr. Taylor's counsel told the court that he intended to call Nautica Little as his sole witness. Addressing the court in anticipation of the state's objection to Ms. Little's testimony, Mr. Taylor's counsel did not call Nautica Little to the stand but, rather, made a narrative statement as an offer of proof:

> Outside the courtroom right now is a witness. Her name is Nautica Little. Your Honor, I would anticipate that I would call her to testify, and if she did testify, Your Honor, she would – she would be able to say that she and her fiancé, George Ford, had been living on the 5700 block of Wabada, which is the house located directly behind or a little bit catty-corner from the truck that the officer pointed out and that George Ford was outside at the time when she heard a commotion.
>
> In addition she would testify that George and Demetrick Taylor know one another; that George Ford considers – well, that she says the relationship between them is stepson. She would then testify that she heard the commotion, she came outside of the residence, she saw that they had Demetrick handcuffed on the ground, that they were shouting about a gun or a weapon.
>
> In addition, she pulled out her phone and began videotaping the incident. And one of the police officers seized her phone away from her and told her that she couldn't, that she couldn't videotape it.
>
> She would be able to testify that they searched George Ford's truck and also he saw him walk around the street and search the lot across the street and they didn't find anything over there either.

The state objected based on the relevancy of Ms. Little's testimony "to the point of whether the defendant possessed cocaine or not" and because many of the statements

4

were hearsay. The court sustained the state's objection and excluded Ms. Little's testimony. Twice during the trial, Mr. Taylor attempted to ask the officers about their interactions with Ms. Little. Mr. Taylor asked Officer Clark if he "encounter[ed] anybody else on the street" and asked Officer Chamblin if "there [was] another female that was outside at any point?" The state objected to these questions based on relevancy. The court sustained the objections. Mr. Taylor did not request to make an offer of proof of either officer's testimony. On May 23, 2013, after three and a half hours of deliberation, the jury found Mr. Taylor guilty.

Following the verdict, Mr. Taylor moved for judgment of acquittal or, in the alternative, for a new trial, arguing error in the exclusion of Ms. Little's testimony. Mr. Taylor argued it was error to exclude her testimony because it was relevant in that she would have testified that Mr. Ford was outside with Mr. Taylor in contradiction to the police officers' testimony that they saw Mr. Taylor alone looking into vehicles and that, when she came out after Mr. Taylor was on the ground, she attempted to record what was happening and the police officers took away her cell phone. The court overruled the motion and proceeded to sentence Mr. Taylor. In response to the trial court's inquiry whether there was any legal reason why judgment, order, and sentence should not be entered, Mr. Taylor's counsel indicated there was not. Mr. Taylor's counsel then requested that the court sentence Mr. Taylor to 13 years in prison and noted that Mr. Taylor was currently incarcerated in the department of corrections on an unrelated matter. The state requested that Mr. Taylor receive a prison sentence of 17 years due to his three prior convictions for distribution, possession, and trafficking of controlled substances.

5

Before speaking to Mr. Taylor, the court acknowledged it had received a letter on Mr. Taylor's behalf from Reverend E.G. Shields, a person that the court respected.

In addressing Mr. Taylor, the trial court stated, without objection from Mr. Taylor's counsel, that he was "sure [Mr. Taylor's counsel] explained to [him] kind of how [the court] operate[s]" such that Mr. Taylor "already kn[e]w what sentence [he] [was] going to get before [the court] pronounce[s] it." Mr. Taylor stated he did not know this. The court explained: "I never sentence a defendant without telling the lawyer what I'm going to do beforehand, and I tell the lawyer to always come and tell you so you sit in that box all morning you know exactly what sentence I'm going to give you because he told you, didn't he? Didn't he tell you?" Mr. Taylor answered: "He told me what you [were] leaning towards. He didn't say—." The court answered:

> All right. So he already told you what I was going to do and so that's – so it's not a surprise when I sentence you. I just, you know, most people that come in here, they think that the defendant is surprised about the sentence, but the defendants are never surprised because I always tell you beforehand.

The court then asked Mr. Taylor if he had anything he wanted to say. Mr. Taylor stated he did not. The court sentenced Mr. Taylor to 16 years in prison as a prior and persistent drug offender. Mr. Taylor appealed. After opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10.

### No Abuse of Discretion in Excluding Ms. Little's Testimony

Mr. Taylor claims the trial court abused its discretion by excluding Ms. Little's testimony because her testimony was relevant to establish Mr. Taylor's only defense – that the officers lied about Mr. Taylor's possession of cocaine and that the officers, rather

6

than Mr. Taylor, were the source of the cocaine they claim he possessed. The state counters that Ms. Little's proffered testimony was not relevant to Mr. Taylor's charge of possession of a controlled substance because Ms. Little could not testify whether Mr. Taylor had a plastic bag of cocaine while being chased by the officers, whether he threw a bag over the fence, or whether Officer Chamblin jumped over a fence and retrieved the bag.

A trial court's decision regarding the admissibility of evidence for relevance is reviewed for an abuse of discretion. *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011). A trial court abuses its discretion only if its decision to exclude evidence is "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010). Evidentiary error is reviewed "for prejudice, not mere error," and error is only prejudicial if the court's error affected the outcome of the trial with "reasonable probability" and deprived the defendant of a fair trial. *State v. Clark*, 364 S.W.3d 540, 544 (Mo. banc 2012) (internal quotations and citations omitted).

To be admissible, evidence must be both logically and legally relevant. *Id.* "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014) (internal quotations and citations omitted). Evidence is legally relevant when the probative value of the evidence outweighs "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Johnson*, 406 S.W.3d at 902 (internal quotations and citations omitted). Mr. Taylor contends Ms. Little's testimony was

relevant: (1) as direct observation of the crime and surrounding circumstances; (2) to contradict the officers' testimony; and (3) to impeach the officers' credibility.

## A. Direct Evidence

Mr. Taylor first contends Ms. Little's proffered testimony was relevant because it related to Mr. Taylor's interactions with police and provided testimony of her direct observation of the crime and surrounding circumstances that went "to the heart of what happened that night, at that arrest." "[D]irect evidence is that coming from an 'eye witness;' or one who speaks directly 'of his own knowledge' on the main or ultimate fact to be proven; or who 'saw or heard' the factual matters concerning which he testifies." *State v. Famber*, 214 S.W.2d 40, 43 (Mo. 1948). Mr. Taylor concedes that Ms. Little did not personally eyewitness Mr. Taylor's conduct prior to his arrest or his pursuit and initial apprehension by the officers. Rather, he claims she was an eyewitness to the "state of the street that night" and Mr. Taylor "being brought into custody."

Regarding Mr. Taylor's claim that Ms. Little was an eye witness to the "state of the street that night," the only proffered testimony regarding her observations prior to seeing Mr. Taylor handcuffed and on the ground was that "George Ford was outside at the time when she heard a commotion." Her personal knowledge that Mr. Ford was outside has little probative value. There was no claim that she observed where Mr. Ford was physically located or what he was doing while he was outside. The mere fact that he was outside does not make the existence of any material fact more or less probable. It merely indicates that Mr. Ford may have witnessed relevant events that night, but Mr. Taylor did not call Mr. Ford as a witness. Ms. Little's proffered testimony that the

8

relationship between Mr. Ford and Mr. Taylor "was stepson" also has little relevance because there is no evidence of any interaction between the two men in her proffered testimony or the testimony of the other witnesses at trial.

Regarding her observations of "Mr. Taylor being brought into custody," the offer of proof was that her first observation of Mr. Taylor was when he was on the ground and handcuffed. Her proffered testimony does not include observations of Mr. Taylor's conduct at the time he was observed by the officers, how he reacted to his encounter with them, or whether he ran from the officers, threw a plastic bag of cocaine, or was apprehended in the manner they claim. Mr. Taylor argues, nevertheless, that her proffered testimony relates to the surrounding circumstances of Mr. Taylor's apprehension and arrest.

The offer of proof included testimony by Ms. Little that she observed Mr. Taylor handcuffed on the ground and the police shouting about a gun or a weapon. There is nothing that aids Mr. Taylor's defense in her observations that he was handcuffed on the ground and the police were shouting about a gun or a weapon. These observations have little logical relevance because they do not make the existence of any material fact more or less probable. There is no dispute that Mr. Taylor was handcuffed on the ground as he was arrested, and there is no claim that he had a gun or weapon during his encounter with the officers.

Her proffered testimony regarding her observations of other circumstances surrounding Mr. Taylor's arrest was that she pulled out her cell phone and began videotaping the incident, one of the police officers seized her phone and would not let her

9

videotape, and the police searched Mr. Ford's truck. Mr. Taylor contends that Ms. Little's proffered testimony that police ordered her to stop recording and seized her cell phone shows "a separate act of dishonesty by police" in "a case where the witnesses' credibility is a crucial and central issue of the case." The offer of proof did not include testimony that Ms. Little was attempting to videotape anything that might have been exculpatory to Mr. Taylor or that the officers were engaged in misconduct that they were attempting to keep from being videotaped. Therefore, the proffered testimony that an officer seized her cell phone is not a "separate act of dishonesty by the police" that she observed. Whether Ms. Little had a right to videotape the events of that evening that the officers may have violated is not logically or legally relevant to whether Mr. Taylor was guilty of possession of cocaine. Likewise, the fact that the officers searched Mr. Ford's truck does not make the existence of any material fact more or less likely.

The final proffered testimony was that Ms. Little would testify that Mr. Ford "saw [the police] walk across the street and search the lot across the street and [the police] didn't find anything over there[.]" Generally, a witness may only testify to those matters of which the witness has personal first-hand knowledge. *State v. Dixon*, 420 S.W.2d 267, 271 (Mo. 1967). Because the offer of proof did not indicate that Ms. Little observed these facts, it would have been reasonable for the trial court to assume Mr. Ford told her these facts, which would make her testimony hearsay. "Hearsay is an out-of-court statement offered for the truth of the matter asserted." *State v. McFadden*, 391 S.W.3d 408, 431 (Mo. banc 2013). Hearsay statements are inadmissible unless they fall under an exception. *Id.* Mr. Taylor does not argue that Ms. Little's testimony regarding anything

10

Mr. Ford saw falls under a hearsay exception. Even if it was not hearsay, this evidence does not aid Mr. Taylor's defense as Officer Chamblin testified to these same facts in his testimony, so the evidence is cumulative. The trial court did not abuse its discretion by limiting cumulative evidence. *See State v. Nicklasson*, 967 S.W.2d 596, 619 (Mo. banc 1998).

In summary, Ms. Little's testimony regarding her personal observations of Mr. Taylor's interactions with police and the circumstances surrounding his arrest had little logical or legal relevance and the trial court could have reasonably concluded that the evidence's potential to confuse or mislead the jury justified exclusion of the evidence. Additionally, Ms. Little's testimony about matters of which she had no personal knowledge would have been hearsay evidence that was not admissible. Because the trial court's decision to exclude this evidence was not clearly against the logic of the circumstances or so unreasonable as to indicate a lack of careful consideration, the exclusion of this evidence was not an abuse of its discretion.

## B. Contradiction Evidence

Mr. Taylor next contends that Ms. Little's proffered testimony is relevant evidence of the officers' credibility because her testimony directly contradicts the officers' testimony about Mr. Taylor's arrest. Evidence contradicting a witness's testimony not only supplies direct factual evidence but also may be used to undermine the confidence in the reliability of the witness's testimony. *Mitchell*, 313 S.W.3d at 675 n.4. As already explained, the trial court did not abuse its discretion in excluding Ms. Little's testimony as direct evidence. When contradiction evidence is sought to be used for impeachment

11

purposes, it not admissible if the contradiction relates to a collateral matter. *Frechin v. Thornton*, 326 S.W.2d 122, 126 (Mo. 1959); *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 661 (Mo. App. 1991).

"A matter is considered to be collateral if the fact in dispute is of no material significance in the case or is not pertinent to the issues developed. . . . If a fact may be shown in evidence for any purpose independent of contradiction, it is not collateral." *Mitchell*, 313 S.W.3d at 680 (internal quotation and citation omitted). The only claims of contradiction argued to the trial court at the hearing on Mr. Taylor's motion for new trial were contradictions with Ms. Little's proffered testimony that Mr. Ford was outside when Mr. Taylor was arrested and that an officer took Ms. Little's cell phone after she began filming the events after Mr. Taylor was arrested.[2]

Mr. Taylor first claims that Ms. Little's proffered testimony that Mr. Ford was outside during the time she heard a commotion would have contradicted the officers' testimony that no one, besides Mr. Taylor, was outside before and during his arrest. Both Officer Clark and Officer Chamblin testified at trial that they did not see anyone but Mr. Taylor when they initially arrived at the scene. When Officer Clark was questioned

_____

[2] In his brief, Mr. Taylor further asserts that his offer of proof showed that Ms. Little's testimony also would have contradicted the officers' testimony because she would have testified that the officers were yelling at Mr. Taylor about a gun or weapon. As to whether the officers were yelling about a gun, Officer Clark was not asked whether anyone was yelling about a weapon. Officer Chamblin did testify that he did not yell at Mr. Taylor about a weapon. Whether an officer was yelling about a gun is not material to any fact in dispute, and this insignificant contradiction does little to impeach the credibility of Officer Chamblin. The trial court did not abuse its discretion in not admitting Ms. Little's testimony regarding the officers yelling about a gun or weapon. *See Mitchell*, 313 S.W.3d at 680.

whether he saw an individual sitting in a car outside, Officer Clark replied: "I don't recall." When Officer Chamblin was asked whether he saw Mr. Ford sitting in his vehicle, he replied that he "didn't see anyone else but Demetrick Taylor initially." Officer Clark testified that, after he and Officer Chamblin put Mr. Taylor in the patrol car, Mr. Ford approached them. Mr. Chamblin testified that he could not remember if he met Mr. Ford but believed that Officer Clark had talked to another individual.

As noted previously, Mr. Taylor's counsel did not state in the offer of proof that Ms. Little would testify that Mr. Ford was visible to the officers while he was outside before or during Mr. Taylor's arrest. Both Ms. Little's observation that Mr. Ford came in from outside after the arrest and the officers' testimony that they did not see anyone until after Mr. Taylor's arrest could be true. Therefore, Mr. Taylor fails to show that Ms. Little's testimony would have contradicted the officers' testimony.

Regarding Ms. Little's testimony that the officers took her cell phone and prevented her from videotaping the events after Mr. Taylor's arrest, both officers were asked whether they encountered anyone else during the incident, but the trial court sustained objections to these questions before the officers could answer. Officer Chamblin was asked whether "there was another female that was outside at any point." The state objected, and the court sustained the objection. Neither officer was asked specifically about whether Ms. Little was videotaping them with a cell phone that one of them seized. Mr. Taylor did not claim on appeal that the trial court erred in sustaining the state's objection to Mr. Taylor's cross-examination of the officers about their specific interactions with Ms. Little. Mr. Taylor claims error only in the trial court's exclusion of

Ms. Little's proffered direct testimony. Because the officers did not testify that they did not take Ms. Little's cell phone or prevent her from videoing the events after Mr. Taylor's arrest, her proffered testimony would not contradict their testimony, so it was not admissible as contradiction testimony.

Because Ms. Little's proffered testimony did not contradict the officers' testimony, her testimony did not make a material fact more or less probable and, therefore, was not logically relevant. As such, the trial court's decision to exclude this evidence was neither against the logic of the circumstances nor indicative of a lack of careful consideration. The trial court did not abuse its discretion in excluding Ms. Little's proffered testimony as contradiction evidence.

### C. Character Impeachment Evidence

Lastly, Mr. Taylor contends that the trial court erred by excluding Ms. Little's testimony about her interactions with the officers because it would impeach the officers' credibility by testifying about allegedly "specific acts of dishonesty." Impeachment evidence can challenge "a witness's perception, credibility, and truthfulness." *Mitchell*, 313 S.W.3d at 675. Missouri rules of evidence generally do not permit a witness to impeach the character of a different witness in the case by testifying about specific instances of the other witness's conduct during direct examination. *Id.* at 678; *see also Leavell v. Leavell*, 89 S.W. 55, 57 (Mo. App. 1905). Additionally, extrinsic evidence of a witness's character for truth and veracity may only be introduced if it is "very probative of and relevant to credibility." *Mitchell*, 313 S.W.3d at 680.

14

Mr. Taylor suggests that Ms. Little wanted to use her cell phone to videotape the officers to capture misconduct. As noted previously, the offer of proof did not include any testimony by Ms. Little that the officers prevented her from videotaping to hide exculpatory events that would have aided Mr. Taylor's defense or that, had Ms. Little's cell phone not been seized, she would have recorded misconduct by the officers. Instead, Mr. Taylor seeks to use Ms. Little's statements that the officers temporarily seized her cell phone to impeach the officers' character to aid in Mr. Taylor's defense that the officers had, at an earlier time, planted the cocaine on Mr. Taylor. The officers preventing Ms. Little from recording the events after Mr. Taylor's arrest is of little probative value to whether the officers previously had planted drugs on Mr. Taylor. As such, the trial court did not abuse its discretion because it could have reasonably found that any minimal probative value in Ms. Little's testimony that the officers told her to stop recording and temporarily seized her cell was outweighed by its collateral nature and the potential to confuse or mislead the jury. Mr. Taylor next contends, for the first time on appeal, that an officer taking Ms. Little's cell phone and telling Ms. Little not to videotape is relevant impeachment evidence because it demonstrates the officer's "consciousness of guilt." While the "[c]onduct and declarations of a defendant that are relevant to show a consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime," *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999), Mr. Taylor has provided no authority for admitting evidence of consciousness of guilt to impeach the credibility of a testifying witness who has not been charged with a crime. By taking the stand, a witness places his

or her credibility at issue, and that credibility may be impeached by various methods. *Mitchell*, 313 S.W.3d at 676. Acts showing a "consciousness of guilt" of a testifying witness, however, is not a recognized form of impeachment.

The offer of proof does not show that Ms. Little's testimony would have been relevant as direct evidence, to contradict the officers' testimony, or to impeach the officers' character. Mr. Taylor has not shown that the trial court's decision to exclude the evidence is clearly against the logic of the circumstances of the case or so unreasonable as to indicate a lack of careful consideration. The trial court did not abuse its discretion by excluding Ms. Little's testimony at trial.

### No Plain Error in Sentencing

Mr. Taylor contends that the trial court plainly erred by depriving him of his right to due process when it declared his sentence before Mr. Taylor and his counsel had an opportunity to present mitigating evidence at his sentencing hearing. The state counters that the trial court did not plainly err because the court only told Mr. Taylor what sentence "it was leaning toward" after it had heard evidence at trial and reviewed the sentencing assessment report. Moreover, the state argues the trial court allowed Mr. Taylor and his counsel an opportunity to present mitigating evidence, considered a reverend's letter as mitigating evidence, and did not "state that it would not be swayed by any mitigating evidence." Because this error was not preserved, Mr. Taylor requests plain error review.

Claims that are not preserved may be reviewed in the discretion of this Court for plain error. Rule 30.20. "Plain error is found when the alleged error 'facially

16

establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015) (internal quotations and citations omitted). Such errors must be "evident, obvious, and clear." *State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014).

Mr. Taylor asserts the trial court's announcement in open court that it is the court's practice to advise trial counsel of the sentence the trial court has decided to impose prior to a sentencing proceeding violates his constitutional rights to due process, assistance of counsel, and freedom from cruel and unusual punishment. In support, Mr. Taylor cites *Green v. United States* , 365 U.S. 301 (1961), and *State v. Wise*, 879 S.W.2d 494 (Mo. banc 1994), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008), for the principle that a defendant has a right to meaningful allocution, including the right to present mitigating evidence before the trial court determines the defendant's sentence.

"As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green*, 365 U.S. at 304. Eight members of the Supreme Court of the United States, in *Green*, agreed that Rule 32 of the Federal Rules of Criminal Procedure "requires a district judge before imposing sentence to afford every convicted defendant an opportunity personally to speak in his own behalf."[3] *Hill v. United States*, 368 U.S. 424, 425-26 (1962). The Supreme Court held in *Hill*, however, that "[t]he failure of a trial court to ask a criminal

---

[3] The Supreme Court in *Green* and *Hill* relied on Rule 32(a). Rule 32 has since been revised, and the requirement that the defendant be given an opportunity to speak or present mitigating evidence is now contained in Rule 32(i)(4)(A).

defendant represented by an attorney whether he has anything to say before sentence is imposed . . . is an error which is neither jurisdictional nor constitutional."[4] *Id.* at 428.

Rule 29.07(b)(1) provides the procedure for allocution and sentencing in Missouri courts. In contrast to the federal rule, Rule 29.07(b)(1) expressly states that the requirement for allocution is directory rather than mandatory when a defendant has been heard on a motion for a new trial and in misdemeanor cases. Rule 29.07(b)(1) reads:

> When the defendant appears for judgment and sentence, he must be informed by the court of the verdict or finding and asked whether he has any legal cause to show why judgment and sentence should not be pronounced against him[.] . . . If the defendant has been heard on a motion for new trial, and in all cases of misdemeanor, the requirements of this subparagraph are directory and the omission to comply with them shall not invalidate the judgment or sentence.

On June 17, 2013, Mr. Taylor filed a motion for judgment of acquittal or, in the alternative, for a new trial. The court heard and adjudicated this motion at the beginning of a hearing on July 23, 2013. Mr. Taylor, Mr. Taylor's counsel, and the prosecuting attorney were present. Before ruling on the motion, the court asked Mr. Taylor's counsel if he wished to make any additional arguments. Mr. Taylor's counsel proceeded to argue the motion, including submitting an exhibit into evidence. After the prosecuting attorney replied, the court stated: "All right. The Court has permitted both counsel to make argument. The motion for new trial is hereby overruled and denied in its entirety."

---

[4] This Court, in *Wise*, notes that several federal district courts have held the right of allocution is constitutionally protected when a criminal defendant affirmatively requests to speak to the court before sentencing. 879 S.W.2d at 516.

18

Rule 29.07(b)(1) expressly states that the requirement that the court ask whether the defendant has any legal cause to show why judgment and sentence should not be pronounced is merely directory when the defendant is heard on a motion for a new trial. The rule further provides that, in those circumstances, the failure of the court to provide allocution does not invalidate the sentence. Because Mr. Taylor was heard on his motion for a new trial, the trial court was not mandated by Rule 29.07(b)(1) to allow Mr. Taylor and his counsel an opportunity to present mitigating evidence. *See State v. Scott*, 621 S.W.2d 915, 918 (Mo. 1981); *State v. Meller*, 387 S.W.2d 515, 518 (Mo. 1965); *State v. Kukovich*, 380 S.W.2d 324, 327 (Mo. 1964); *State v. Drake*, 298 S.W.2d 374, 378 (Mo. 1957).

While Rule 29.07(b)(1) may not have mandated the trial court to give Mr. Taylor allocution, the routine practice of the trial court in announcing its decision prior to a scheduled hearing on the matter is at odds with the long-standing right that a criminal defendant personally be given the opportunity to speak and to present mitigating evidence prior to sentencing. The trial court's announced purpose in adopting its practice is to avoid surprising a criminal defendant in open court with the pronounced sentence, possibly because the judge wishes to avoid the emotional trauma to a defendant that may occur when a defendant hears a severe sentence for the first time. That purpose would not outweigh the importance of a trial court allowing a criminal defendant to be heard.

Nevertheless, this case does not compel resolution of the issue of whether a criminal defendant has a right to present mitigating evidence despite the express statement in Rule 29.07(b)(1) that the requirement of allocution is merely directory and

19

this Court's prior decisions holding that there is no reversible error in failing to give allocation, which would include a meaningful opportunity to present mitigating evidence. Mr. Taylor does not cite authority directly addressing whether Rule 29.07(b)(1) and this Court's decisions are at odds with a criminal defendant's due process rights. Therefore, he fails to make a persuasive argument that this Court should reexamine existing law and overrule its precedent.

Finally, Mr. Taylor does not show that he did not receive allocution or a meaningful opportunity to present mitigating evidence. Specifically, he does not show that the trial court did not consider all of the evidence relevant to sentencing, both mitigating and aggravating, before informing Mr. Taylor's counsel that he intended to impose a sentence of 16 years. Before sentencing, the court asked Mr. Taylor's counsel if Mr. Taylor had an opportunity to review the sentencing assessment report. His counsel answered he had. This inquiry shows that the sentencing assessment report was made available to the trial court, Mr. Taylor, and the state prior to the hearing on July 23, 2013. The court then asked Mr. Taylor's counsel and the prosecuting attorney: "Do you have any legal reason why judgment, order and sentence not be entered at this time?" Both answered no. In response to the trial court's invitation to Mr. Taylor's counsel to make statements on behalf of his client, Mr. Taylor's counsel referenced information in the sentencing assessment report, arguing to the court that Mr. Taylor was asking for a sentence of 13 years in prison on a crime that carried a maximum of life in prison. The trial court then stated that it had received a letter from Reverend Shields on behalf of Mr. Taylor. The trial court stated that Reverend Shields knew Mr. Taylor's mother and

20

family, which demonstrates that the trial court had read the letter sent on Mr. Taylor's behalf. Only after this exchange did the court address Mr. Taylor individually and proceed to sentence him. In doing so, the trial court asked Mr. Taylor if there was anything he wished to say, and Mr. Taylor responded that there was not.

On this record, Mr. Taylor fails to show the trial court plainly erred. Any mitigating evidence was in the sentencing assessment report and Reverend Shields' letter, and both were filed prior to the sentencing hearing and available for the trial court's review. Mr. Taylor did not prove, much less argue, that the trial court did not review and consider that evidence prior to advising Mr. Taylor's counsel of the court's intention to impose a sentence of 16 years in prison. Equally important, Mr. Taylor did not present any additional mitigating evidence at the sentencing hearing that he claims the trial court did not consider.

Because Mr. Taylor did not object to the trial court's announced practice of advising a criminal defendant of a sentence prior to allocution, he asks for plain error review, which would require him to prove manifest injustice or a miscarriage of justice. Rule 30.20. Mr. Taylor has not demonstrated manifest injustice or a miscarriage of justice because he has not proved that the trial court did not consider all the mitigating evidence, albeit prior to the hearing, before determining the sentence the trial court intended to impose.

## Conclusion

The trial court could have reasonably found that Ms. Little's proffered testimony was not relevant as direct observations of the crime or surrounding circumstances, did

not contradict the officers' testimony, and was not proper evidence to impeach the officers' character. As such, the trial court did not abuse its discretion by excluding Ms. Little's testimony at trial. Because Mr. Taylor was heard on his motion for a new trial, the trial court had received mitigating evidence, and Mr. Taylor does not show that the trial court did not consider such evidence in determining his sentence, there is no plain error in the trial court's sentencing of Mr. Taylor. Accordingly, the trial court's judgment is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE


Fischer, Wilson and Russell, JJ., concur;
Stith, J., dissents in separate opinion filed; Draper
and Teitelman, JJ., concur in opinion of Stith, J.


| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | ) No. SC94503 |
| | ) |
| DEMETRICK TAYLOR, | ) |
| | ) |
| Appellant. | ) |

## DISSENTING OPINION

I respectfully dissent from the principal opinion's holding that the trial court did not err in excluding the testimony of Ms. Little. The principal opinion basically says that, because Ms. Little did not observe the beginning of the police encounter with Mr. Taylor, her testimony has no relevance either as direct evidence or for impeachment purposes. That is just incorrect.

The police officers testified that they saw Mr. Taylor was alone on the street looking into parked vehicles. They said he ran when they walked toward him, removed a baggie from his waistband, and tossed it into a fenced yard as he ran. The police officers testified that they recovered the baggie and that it contained crack cocaine. They further testified that they put Mr. Taylor on the ground and handcuffed him, put him in the patrol car, went back into the fenced yard but did not see any other drugs, and checked vehicles to see if any had been broken into, but none had been. They finally testified it was only as

they were checking Mr. Ford's car, the door of which was open, that Mr. Ford came out of his house across the street and approached the vehicle and gave police permission to search his car.

The prosecution apparently thought this entire series of events was relevant, including the portion of the events that occurred prior to the police officers' chase of Mr. Taylor as well as the events that occurred after the police officers handcuffed and arrested him and recovered the baggie of crack cocaine. Surely the principal opinion is not stating that the trial court should have excluded this evidence as irrelevant or immaterial because it did not concern the arrest and discovery of the baggie itself. Indeed, it would have been an abuse of discretion for the trial court to prevent the prosecutor from questioning the police officers about the precursor to and remainder of their encounter with Mr. Taylor once they arrested him. The jury would be curious as to the entire circumstances of the arrest, and providing that information would give the jury a better understanding of what occurred.[1] But if it was relevant and material evidence for the prosecution to introduce, then it was relevant and material evidence for the defense to present testimony of a witness who says that different facts led up to and followed the defendant's arrest. Accordingly, it was an abuse of discretion not to allow Ms. Little to testify to what she saw and heard prior to and after the arrest. The *res gestae* does not

---

[1] If the principal opinion is stating that it was error to allow the police to testify to the events leading up to and following the arrest as part of the *res gestae*, then under the doctrine of "curative admissibility," the defense should also have been entitled to put on evidence about these events. "The curative admissibility doctrine applies when one party introduces inadmissible evidence and allows the opposing party to introduce otherwise

2

shrink in size once the prosecution rests, nor do different rules of admissibility and relevance apply to the prosecution and the defense.

The evidence also was relevant for purposes of impeachment. The defense offered by Mr. Taylor was that he was not looking into cars, that he did not have or throw a bag of cocaine, and that the baggie containing crack cocaine was planted by the police. Defense counsel, therefore, sought to impeach the officers' testimony by presenting a witness, Ms. Little, who would testify that Mr. Taylor was not the only one on the street when the police officers began chasing Mr. Taylor; her husband, Mr. Ford, was outside when she heard the commotion that accompanied Mr. Taylor's arrest. Ms. Little would have testified that the police officers were shouting at Mr. Taylor about a gun or weapon even though he had none. And she would have testified that the police took her cell phone when she tried to take video of them after the arrest.

None of this, the principal opinion says, is relevant and the defense had no right to impeach the officers' testimony about these events surrounding the arrest of Mr. Taylor. Those events, the principal opinion says, citing *Mitchell v. Kardesch, 313 S.W.3d 667, 675 (Mo. banc 2010)*, are just collateral matters that do not impact on the police version of events or the credibility of the police officers' testimony. Moreover, the principal opinion says, it has considered the offered testimony and, in its view, it was "not very probative" and so could be excluded. In other words, once the actual arrest is testified to, a police witness can testify to what occurred next without fear of being impeached

---

inadmissible evidence to rebut or explain inferences raised by the first party's evidence." *State v. Taylor, 298 S.W.3d 482, 493 (Mo. banc 2009)*.

3

because the impeachment evidence will be excluded as being collateral.

That just *is not* and *should not be* the law. Ms. Little's testimony, if believed, would have called into question the police officers' testimony of the circumstances surrounding their encounter with Mr. Taylor. The jury might well agree with the majority of this Court that this evidence is not very probative of credibility and, instead, may believe the police version of events – but that is an issue for the jury, not for this Court.

That is why *Mitchell* itself held that credibility always is central and probative and that it is error to exclude evidence that goes to the credibility of testimony relevant to the case. "Cross-examination may be had on issues relevant to the witness's character for truth and veracity regardless of whether the subject of the falsehood is material." *Mitchell, 313 S.W.3d at 679.* In *Mitchell,* evidence that the defendant had falsely answered interrogatories in that very case was relevant to his credibility when testifying at trial, even though the subject of the falsehood otherwise would have been collateral. This Court, therefore, held that the trial court erred in excluding "extrinsic evidence to impeach a witness … regardless of whether the subject of the extrinsic evidence is independently material to the case." *Id. at 679, 682.*

Similarly, here, evidence that the officers allegedly inaccurately described the circumstances under which they first saw Mr. Taylor and the circumstances after his arrest is relevant and material to their credibility when testifying to the circumstances of his arrest. It does not matter whether it is important in itself that Mr. Ford was or was not outside, which is the basis of the principal opinion's determination that exclusion of this

4

evidence was not error.  Rather, here, as in *Mitchell*, it is the alleged falsity of the testimony about the events that led up to the arrest, and later the events at the conclusion of the arrest, that makes this evidence relevant, material and admissible regardless of whether the subject of the falsehoods otherwise is central to the case.

Evidence from Ms. Little that contradicts that of the officers as to the events leading up to and following the arrest of Mr. Taylor, if believed by the jury, casts doubt on the officers' testimony about the arrest itself.  Mr. Taylor wanted to use this evidence to argue to the jury that if the officers' testimony was not believable as to these aspects of the arrest, the officers' testimony about seeing Mr. Taylor throw the bag of crack cocaine also should not be believed.  The jury certainly was free to reject this argument, but it should have had an opportunity to hear and weigh the evidence supporting it.

For these reasons, I respectfully dissent.


_____
**LAURA DENVIR STITH, JUDGE**

5