

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110394 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CR03875-01 |
| | ) | |
| MARK AARON, | ) | Honorable Stanley J. Wallach |
| | ) | |
| Appellant. | ) | Filed: April 25, 2023 |

### I. Introduction

Mark Aaron appeals the judgment entered after a jury found him guilty of first-degree assault, armed criminal action, and unlawful possession of a firearm. We affirm.

### II. Background

Aaron's convictions stem from a shooting on August 18, 2020. After becoming concerned about the whereabouts of a missing cellphone, Aaron and his girlfriend went to Marcus Recar's and his girlfriend's residence. Soon after their arrival, Aaron's girlfriend and Recar's girlfriend began to fight. Aaron, a convicted felon, picked up a firearm from his girlfriend's sweatshirt and shot Recar four times. Aaron and his girlfriend fled from the scene, and a neighbor called the police.

Although Aaron did not testify at trial, Aaron's girlfriend advanced a theory of self-defense on his behalf. She testified that Aaron shot Recar after Recar moved first towards her before

1

changing directions and charging towards Aaron with a metal pipe. Recar and his girlfriend both testified that Recar was unarmed during the entirety of the incident.

After the shooting, Dr. Matthew Pieper, a trauma surgeon, treated Recar at Saint Louis University Hospital Trauma Center. At trial, Dr. Pieper testified about Recar's surgery and the extent of his injuries. Over Aaron's objection, the State introduced into evidence a photograph of Recar's torso showing a large opening in his abdomen covered by a black sponge and a small gunshot wound above it. Dr. Pieper testified that the photograph showed Recar's abdomen during an initial "damage-control surgery" and that the sponge served as a "dressing that is covering his internal organs." Dr. Pieper also testified, over Aaron's objection, about the pain that an individual would be expected to experience after being shot.

The jury found Aaron guilty of first-degree assault, armed criminal action, and unlawful possession of a firearm. This appeal follows. In his three points on appeal, Aaron challenges the admission of the photograph of Recar after surgery and the admission of expert testimony regarding the pain a person experiences after being shot.

### III. Standard of Review

A circuit court has broad discretion to admit or exclude evidence at trial. *State v. Blurton*, 484 S.W.3d 758, 779 (Mo. banc 2016). We will reverse a circuit court's decision to admit evidence only if the circuit court abused its discretion and the opponent of the evidence was thereby prejudiced. *State v. Hughes*, 469 S.W.3d 894, 902 (Mo. App. E.D. 2015). "An abuse of discretion must be clearly against the logic of the existing circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id*. "To prevail on appeal, the defendant must demonstrate prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Forster*, 616 S.W.3d

2

436, 445 (Mo. App. E.D. 2020) (internal quotation marks and citations omitted). The test for prejudice is outcome-determinative and requires a finding that, "when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001).

## IV. Discussion

In order to be admissible, evidence must be both logically and legally relevant. *Blurton*, 484 S.W.3d at 777. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (quoting *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015)). "Evidence is legally relevant when the probative value of the evidence outweighs its costs, such as unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* (internal quotation marks and citation omitted).

### *Admission of Photograph*

In his first point on appeal, Aaron asserts that the circuit court abused its discretion by admitting the photograph of Recar's torso. Aaron does not contest the logical relevance of the photo. Rather, he contends that the photograph was so "shocking and gruesome," its probative value was outweighed by its prejudicial impact. Specifically, Aaron contends that the photograph was cumulative to the testimony regarding the extent of Recar's injuries and that, because the seriousness of the injury was not contested, the photograph served no purpose but to arouse emotion in the jury.

"Photographs are admissible if they accurately and fairly represent what they purport to depict and tend to prove or disprove any of the elements of the charged offense." *State v. Cannady*, 389 S.W.3d 306, 312 (Mo. App. S.D. 2013) (internal quotation marks and citation omitted). Even

if a photograph may be inflammatory, it should not be excluded if it is relevant. *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998). A photograph is relevant if it "show[s] the scene of the crime, the identity of the victim, the nature and extent of the wounds, the cause of death, the condition and location of the body, or otherwise constitute[s] proof of an element of the crime or assist[s] the jury in understanding the testimony." *Id*. If a photograph is shocking or gruesome, it is generally because the crime itself was shocking or gruesome. *Id*. Additionally, "a photograph is not rendered inadmissible because other evidence may have described what is shown in the photograph; nor is the State precluded from introducing the photograph because the defendant expresses a willingness to stipulate to some of the issues involved." *Forster*, 616 S.W.3d at 446 (internal quotation marks and citations omitted).

Here, Aaron characterizes the admitted photograph as "grotesque" and "gruesome" and contends that it served no other purpose than to inflame the jury. While the photograph may be unpleasant as a result of the medical dressing and gunshot wound, it depicts the seriousness of the injuries sustained by Recar following his medical surgery. The photograph was relevant to show the nature of the wounds and assisted the jury in understanding Dr. Pieper's testimony. Moreover, we do not find the photograph particularly gruesome. It is a post-surgical photograph in which all blood has been cleared away. Although Recar's abdomen was opened during the surgery, the whole of the surgical site is covered with a large black sponge such that nothing internal remains visible. To the extent that the photograph may be considered gruesome, that would only be a result of the gruesome nature of the crime.

Aaron also argues that the photograph was cumulative to other testimony about Recar's injuries and that it should have been excluded because the defense conceded the fact of serious physical injury. However, the fact that Dr. Pieper and Recar also testified about the nature of the

injury did not render the photograph inadmissible. The photograph served as corroborating evidence of the testimony. Additionally, Aaron could not preclude evidence of the seriousness of the injuries simply by attempting to concede that fact. *See Forster*, 616 S.W.3d at 446 ("As the [S]tate has the heavy burden of proving defendant's guilt beyond a reasonable doubt, it should not be unduly limited in the quantum of its proof even though [the] defendant made a tentative offer to stipulate as to the identity of the victim." (internal quotation marks and citation omitted)).

Because Aaron has not demonstrated that the circuit court abused its discretion by admitting this photograph, Point I is denied.

### *Admission of Expert Testimony*

In Aaron's second and third points on appeal, he asserts that the circuit court abused its discretion when it permitted Dr. Pieper to testify as an expert witness as follows:

> [Prosecutor:] Okay. Doctor, what kind of pain would a person who has been shot multiple times be going through? What is their body going through?
>
> [Dr. Pieper:] Could I ask clarification, if you mean like initially or when they come to see me?
>
> [Prosecutor:] So, initially. After they've been shot, what's going on with their body regarding their senses? Pain sensory type?
>
> [Dr. Pieper:] Well, in this patient scenario, I imagine he'd feel a sharp pain to his abdomen, chest. That's, you know, maybe relative to a different, you know, person to person, but these types of injuries are painful. It's hard to quantify, if that's what you're asking me.
>
> [Prosecutor:] Would it be possible for him to misconstrue pain elsewhere because of what's going on?
>
> [Dr. Pieper:] Sure. So definitely when people come in with certain injuries, you know, we might call that a distracting injury that might not make you recognize something else, so that's why we have to do follow-up scans and follow-up examinations, because their initial pain might be significant enough to distract them from a second injury.

5

Aaron contends that this testimony was speculative, not based on facts or data, and was outside Dr. Pieper's qualifications as an expert on general medical knowledge. Aaron also argues that pain is within a lay person's knowledge and, therefore, Dr. Pieper's expert opinion about it invaded the province of the jury.

Section 490.065.2 governs the admissibility of expert opinion testimony in criminal cases. *State v. Carpenter*, 605 S.W.3d 355, 360 (Mo. banc 2020). That section provides:

> In all actions except those to which subsection 1 of this section applies:
>
> (1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Under § 490.065.2, admissibility of expert testimony requires simply that it be relevant, reliable, and proffered by a qualified expert. *State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 319 (Mo. App. E.D. 2018). Expert testimony is relevant if it contains scientific, technical, or otherwise specialized knowledge that will assist the trier of fact. § 490.065.2(1)(a). Reliability is determined by considering whether the testimony is based on sufficient facts or data, reliable principles and methods, and reliable application thereof. § 490.065.2(1)(b)-(d). An expert is qualified by their "knowledge, skill, experience, training, or education." § 490.065.2(1). An expert may base their opinion on "facts or data in the case that the expert has been made aware of or personally observed." § 490.065.2(2).

First, Dr. Pieper was qualified. Aaron asserts that because the State only qualified Dr. Pieper as an expert in "general medical knowledge" and not a "medical professional specializing in nervous pain responses," Dr. Pieper was not qualified to testify about the pain experienced by a

gunshot victim. We are not persuaded. Dr. Pieper testified that he earned a doctorate of osteopathic medicine, completed a general surgery residency, spent three years as a general surgeon in the United States Air Force, and participated in a one-year trauma fellowship at St. Louis University. Dr. Pieper worked the last seven years as a trauma and acute care surgeon and had experience treating gunshot wounds. Dr. Pieper also underwent frequent training related to the treatment of gunshot wounds. Dr. Pieper's education and training refutes Aaron's argument that Dr. Pieper was not qualified to testify about the pain experienced by a person who is shot. Moreover, his extensive experience treating gunshot wounds also qualifies him on this subject. "Section 490.065.2(1) expressly contemplates that an expert may be qualified on the basis of experience alone." *Wright*, 562 S.W.3d at 321.

Second, Dr. Pieper's testimony was relevant. Aaron argues that Dr. Pieper's testimony was not relevant because the feeling of pain is within a lay person's experience. We disagree. The threshold test in determining the relevance of an expert witness's testimony is whether their testimony will help the jury understand the evidence or decide contested issues. *Carpenter*, 605 S.W.3d at 360. But nothing in § 490.062.2 requires jurors to be wholly ignorant of the topic on which an expert would testify. *Id.* Here, Dr. Pieper did not testify regarding generalized pain. Rather, he testified to the pain experienced by individuals after they suffer a gunshot wound, which remains a relatively uncommon experience, unfamiliar to the average juror. Although the average juror could be expected to understand that a gunshot would cause some level of pain, Dr. Pieper's testimony could still be helpful by providing an understanding not only of the seriousness of injuries sustained after being shot, but also of any conduct exhibited by a person after being shot multiple times.

Finally, Dr. Pieper's testimony was reliable and not speculative. Aaron points to Dr. Pieper's use of the words "imagine" and "might" in his testimony to support the claim that Dr. Pieper was speculating in answering a question about the kind of pain an individual would experience after being shot. However, an expert witness's use of certain language does not automatically render their testimony speculation. *See Lineberry v. Shull*, 695 S.W.2d 132, 136 (Mo. App. W.D. 1985) (noting that the use of the word "think" or "guess" by an expert witness does not render their testimony inadmissible if they intended to express their opinion or judgment). Dr Pieper's testimony was not an "untethered guess" as Aaron suggests, but instead based on a rational foundation, specifically the facts and data he observed during his extensive medical training and experience dealing with gunshot wounds as a trauma surgeon. *See* § 490.065.2(2); *see also* § 490.065.2(1)(b)-(d).

Because Aaron has not demonstrated that the circuit court abused its discretion by admitting this testimony, Points II and III are denied.

### V. Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.

_____
John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.