

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112815 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Washington County |
| vs. | ) | Cause No. 23WA-CR00278-01 |
| | ) | |
| NARVEL S. HARMON, | ) | Honorable Wendy W. Horn |
| | ) | |
| Appellant. | ) | Filed: July 29, 2025 |

### Introduction

Narvel Harmon ("Defendant") appeals the circuit court's judgment after a jury found him guilty of first-degree harassment. In his sole point on appeal, Defendant argues the circuit court abused its discretion by admitting evidence of a "trigger-like" gesture he made during his preliminary hearing because it was speculative to interpret Defendant's gesture as a threat. This Court holds the circuit court did not err in admitting the evidence of Defendant's gesture because it was a threat toward the victims, which was admissible to show Defendant's consciousness of guilt. Point I is denied. The circuit court's judgment is affirmed.

### Factual and Procedural History

Because Defendant does not challenge the sufficiency of the evidence to support his conviction, the facts viewed in the light most favorable to the verdict are:[1] Brayden Burns and

---

[1] *State v. Townsend*, 649 S.W.3d 72, 77 (Mo. App. E.D. 2022).

Haley Juliette (collectively, "Victims") were neighbors with Defendant, who was also Juliette's distant cousin. In the past, Victims regularly provided Defendant with food, water, and a place to shower.

In the evening of August 8, 2023, Victims were at home with their one-year-old daughter when Defendant came into their house irate and unannounced, speaking incomprehensibly. Juliette testified Defendant said he was Jesus and other "totally ludicrous" things. To de-escalate the situation, Victims told Defendant they were going to Juliette's sister's house for dinner. Defendant left their house within minutes.

Again unannounced, Defendant returned shortly afterwards. After coming into their house, Defendant "flung his shirt off," said he was Jesus and Jesse James, and said he was hot because a man named Rico was coming after him. Defendant threatened to kill Victims and Juliette's grandmother. Defendant claimed to own Victims' house and threatened to burn it down. Burns stated, "I was pretty scared. I'm not too scared of much, but I was constantly scared. Felt threatened. Very, very, very threatened." Juliette stated, "It's terrifying. When someone comes in right next to your baby, that's terrifying." For five to ten minutes, Victims repeatedly requested Defendant leave. After Defendant left their home, Victims went to Juliette's sister's house and called the police.

Deputy Ethan Haworth of the Washington County Sheriff's Office spoke to Defendant later in the evening. Defendant admitted he entered Victims's home. Deputy Haworth testified Defendant stated he "did not make a claim that he was going to kill someone, just that he wanted to kill someone." The State charged Defendant with first-degree harassment and first-degree burglary.

At Defendant's preliminary hearing, Deputy Austin Huett of the Washington County Sheriff's Office sat in the courtroom behind Victims. After the hearing concluded, Defendant was being escorted out of the courtroom. When he walked in front of Victims, Deputy Huett saw Defendant raise his hands to under his chin and move his thumb in a "trigger-like" manner. Deputy Huett testified the gesture was directed at Victims.

Defendant objected to the admission of Deputy Huett's testimony at trial, arguing it was more prejudicial than probative. The circuit court overruled the objection and admitted Deputy Huett's testimony. During closing argument, the State said, "If you have any doubt, any doubt at all, it's expelled by the fact that almost two months later he's in court, in shackles, going like this, trying to intimidate them even more, trying to still harass them." The jury acquitted Defendant of first-degree burglary, but convicted him of first-degree harassment. Defendant was sentenced to seven years' imprisonment.

This appeal follows.

**Standard of Review**

"The general rule for the preservation of error is an objection stating specific grounds must be made at trial, the same grounds must be set out in the motion for new trial, and these grounds must be renewed in the appellate brief." *State v. Young*, 603 S.W.3d 305, 313 (Mo. App. E.D. 2020). Here, Defendant objected to the admission of Deputy Huett's testimony at trial, renewed the objection in his motion for new trial, and raised the issue in his appellate brief. Accordingly, the issue is properly preserved.

Because the issue is properly preserved, "[a] [circuit] court's decision regarding the admissibility of evidence for relevance is reviewed for an abuse of discretion." *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015). "A [circuit] court abuses its discretion only if its decision to

exclude evidence is 'clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Id.* (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010)). "[I]f reasonable persons can differ about the propriety of the action taken by the [circuit] court, then it cannot be said that the [circuit] court abused its discretion." *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020) (quoting *State v. Brown*, 939 S.W.2d 882, 883– 84 (Mo. banc 1997)). "[This Court] review[s] [circuit] court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Tolen*, 295 S.W.3d 883, 889 (Mo. App. E.D. 2009). "The [circuit] court's discretionary ruling is presumed to be correct and the burden is on the defendant to overcome that presumption." *State v. Adams*, 443 S.W.3d 50, 53 (Mo. App. E.D. 2014).

**Discussion**

*Point I: Alleged Prior Bad Act Evidence*
*Party Positions*

Defendant argues the circuit court abused its discretion in admitting Deputy Huett's testimony regarding the "trigger-like" gesture. He contends this evidence was more prejudicial than probative because it was speculative to interpret his gesture as a threat. The State asserts Deputy Huett's testimony was admissible to show Defendant's consciousness of guilt. The State also argues even if Deputy Huett's testimony was improperly admitted, Defendant was not prejudiced because it presented overwhelming evidence of his guilt.

Evidence must be logically and legally relevant to be admissible. *Taylor*, 466 S.W.3d at 528. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (quoting *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014)). Logical relevance is a "low-level test that is easily met." *State v. Thomas*, 628 S.W.3d 686, 691 (Mo. App.

4

E.D. 2021) (quoting *State v. Banks*, 582 S.W.3d 919, 924–25 (Mo. App. E.D. 2019)). "Evidence is legally relevant when its probative value outweighs 'unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness.'" *Taylor*, 466 S.W.3d at 528 (quoting *Johnson v. State*, 406 S.W.3d 892, 902 (Mo. banc 2013)).

"[C]onduct and declarations of a defendant that are relevant to show consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime." *State v. Butler*, 642 S.W.3d 364, 370 (Mo. App. E.D. 2022) (quoting *State v. Speaks*, 298 S.W.3d 70, 84 (Mo. App. E.D. 2009)). "Evidence that the defendant threatened a witness is admissible to show consciousness of guilt." *Id.* The circuit court does not err in admitting evidence of a defendant's conduct or declarations that "reasonably can be interpreted as threatening harm to a witness." *Id.* at 370-71 (holding a defendant asking a friend to "take [them] out to eat" on a jail phone call could reasonably be interpreted as a threat toward the witnesses against him and is admissible, even given alternate explanations).

Here, Defendant argues the "trigger-like" gesture was not a threat but was an expression of suicidal despair at his predicament. This Court disagrees. Like the statement in *Butler*, the "trigger-like" gesture could reasonably be interpreted as Defendant threatening to harm Victims. The gesture imitated the firing of a gun, occurred "when [Defendant] got in front of the [V]ictims," and Deputy Huett testified it was directed at Victims. The gesture also occurred during the preliminary hearing, before Victims testified at trial, supporting the inference the gesture was intended to threaten them. Because the gesture could reasonably be interpreted as a threat, it is admissible, even given alternate explanations. Hence, because evidence of Defendant's gesture is logically and legally relevant, the circuit court did not abuse its discretion in admitting Deputy Huett's testimony.

Even if the evidence were irrelevant—which it is not—Defendant suffered no prejudice because the State presented overwhelming evidence of his guilt. "In a criminal case involving improperly admitted evidence, the test for prejudice is whether the error was outcome-determinative." *Thomas*, 628 S.W.3d at 691 (quoting *State v. Yung*, 246 S.W.3d 547, 555 (Mo. App. S.D. 2008)). Prejudice is outcome-determinative if "there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *Id.* at 694.

A first-degree harassment conviction requires the State prove the defendant "without good cause, engages in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress." § 565.090.1.[2] "Intent is rarely susceptible to proof by direct evidence and is most often inferred circumstantially." *State v. Lammers*, 479 S.W.3d 624, 633 (Mo. banc 2016). "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and the defendant's subsequent conduct." *State v. McClain*, 685 S.W.3d 35, 39 (Mo. App. E.D. 2024) (quoting *State v. Hineman*, 14 S.W.3d 924, 927–28 (Mo. banc 1999)).

Here, Burns testified Defendant came into his house unannounced, threatened to kill him, Juliette, and Juliette's grandmother. Defendant also threatened to burn their house down because Defendant thought he owned it. Defendant's actions made Burns feel threatened and scared. Juliette testified Defendant came into their house unannounced, took his shirt off, and said he was Jesus and Jesse James. Defendant's threats made Juliette feel terrified, especially because Defendant was so close to her baby. Deputy Haworth testified Defendant stated he "did not make a claim that he was going to kill someone, just that he wanted to kill someone." Given this testimony, even if the circuit court improperly admitted evidence of Defendant's gesture, he

---

[2] All statutory references are to RSMo 2016.

suffered no prejudice because the State presented overwhelming evidence of his guilt. The circuit court did not abuse its discretion in admitting the "trigger-like" gesture.

Point I is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Judge

Michael S. Wright, P.J. and
Virginia W. Lay, J. concur.