**STATE of Missouri, Plaintiff–Respondent,**

v.

**William A. YUNG, Defendant–Appellant.**

No. 27547.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 29, 2008.

Craig Allan Johnston, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel McPherson, Asst. Atty. Gen. of Jefferson City, MO for Respondent.

JEFFREY W. BATES, Chief Judge.

William Yung (Defendant) was charged by amended information with committing robbery in the first degree and armed criminal action. *See* § 569.020; § 571.015.[1] The information also alleged that Defendant was a prior offender based upon a 1999 New Jersey conviction for possession of marijuana with the intent to distribute. After a jury trial, Defendant was convicted of both offenses. The trial court sentenced Defendant to twenty years imprisonment for robbery and five years for armed criminal action. On appeal, Defendant contends that his prior offender status was not sufficiently proven and that the trial court should have excluded inadmissible hearsay testimony offered to explain subsequent police conduct. This Court affirms.

Defendant does not challenge the sufficiency of the evidence to sustain his convictions. The facts and all reasonable inferences derived therefrom are considered in a light most favorable to the verdict. *State v. Dillard,* 158 S.W.3d 291, 294 (Mo.App.2005). All contrary evidence and inferences are disregarded. *State v. Lawrence,* 64 S.W.3d 346, 348–49 (Mo.App. 2002). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Defendant are summarized below.

On August 19, 2003, Anna Kilpatrick was working as a cashier at the Flying J convenience store in Joplin, Missouri. The store had videotape surveillance cameras covering the counter and cash register from two different angles.[2] At 4:40 a.m., two young men were in the store. One was wearing blue jeans, a short-sleeved t-shirt and a solid-colored stocking cap (Robber No. 1). The other was wearing long pants, a long-sleeved plaid shirt and a gray stocking cap with a design and some writing on it that included the letter "n" (Robber No. 2). Both mens' faces were visible because the stocking caps only covered their hair. Robber No. 1 came up to the cash register with a soft drink, and Kilpatrick rang up the purchase. When the register drawer opened, Robber No. 1 leaped over the counter armed with a handgun. Robber No. 2 remained on the other side of the counter. He, too, was armed with a handgun and watched the front doors of the store. Robber No. 1 pointed his gun at Kilpatrick and made her get on the floor. He took approximately $1,900 in cash from the register, placed it

---

1. All references to Missouri statutes are to RSMo (2000).

2. One camera was positioned behind the counter a few feet to the right of Kilpatrick. It recorded events occurring behind the counter and just in front of the cash register. The other camera was positioned in front of and a few feet to the left of Kilpatrick. It recorded events occurring in front of the counter and just behind the cash register. A copy of the black and white surveillance tape showing the robbery was admitted at trial as State's Ex. 1 and played for the jury.

into a large bag that Robber No. 2 was holding and scrambled back over the counter. Both men then left the store together. An investigation of this crime was undertaken by the Jasper County Sheriff's Department. Captain Jerry Gilbert was the lead investigator assigned to the case.

On August 31, 2003, Officer Candy Conley was working as a patrolman for the Quartzsite, Arizona, police department. At 4:25 a.m., she received a dispatch that an armed robbery had occurred approximately 17 miles away. Conley was advised to watch Interstate 10 for an older model, white Toyota pickup with a camper shell. At 4:40 a.m., Conley saw a vehicle matching that description traveling eastbound on the interstate. She began following the truck. After backup arrived, Conley initiated a traffic stop. When the truck stopped, the driver exited the vehicle and opened fire. Police officers returned fire, and the driver was killed. The decedent was later identified as Justin McGuire. During the shootout, Defendant exited the passenger side of the truck and was arrested by police. The 1986 white Toyota pickup, which belonged to McGuire, was impounded. Defendant was interviewed by a sergeant with the La Paz County, Arizona, Sheriff's Department. Defendant said he and McGuire had left New Jersey together and were traveling to California.

On September 11, 2003, Gilbert received a telephone call from Margie Turner. Turner believed she knew who had robbed the Flying J. She identified herself as McGuire's sister and said she had received a telephone call from him on August 18, 2003. He was in the Joplin area, and his car was broken down. Turner had not seen or heard from McGuire since that time, and she believed that he had been involved in the Flying J robbery.

At Gilbert's request, Turner sent him a photograph of McGuire. Gilbert compared the photograph to the images on the Flying J surveillance tape and thought that McGuire bore a strong resemblance to Robber No. 1 who had jumped over the counter. Based upon the information provided by Turner, Gilbert also contacted the La Paz County Sheriff's Department and learned that Defendant was in custody there. Gilbert obtained a picture of Defendant from Arizona and compared the photograph to the images on the Flying J surveillance tape. Gilbert thought that Defendant bore a strong resemblance to Robber No. 2, the other young man involved in the robbery.

Gilbert traveled to Arizona and obtained a warrant to search McGuire's truck. During the search, Gilbert found the following items: (1) a gray-and-blue stocking cap with a small design and the word, "independent," written on it; (2) a plaid shirt; (3) a green stocking cap; (4) a Flying J phone card; and (5) a number of receipts, dated after the Flying J robbery and from locations within 60 miles of Joplin, showing expenditures totaling approximately $1,400.

At trial, Kilpatrick identified Defendant as the man who was wearing the plaid shirt during the robbery. She was sure Defendant was the man she saw in the store that night:

Q. Have you seen [Defendant] since the robbery?

A. At the preliminary hearing.

Q. And what was your reaction when you walked into the courtroom that afternoon and saw [Defendant] for the first time since the robbery; what went through your mind?

A. I saw him standing on the other side of that counter.

Q. You had a flashback and you knew then that he was the man?

A. Yes.

Additional facts necessary to the disposition of the case are included below as we address Defendant's two points of error.

## Point I

Defendant's first point challenges the sufficiency of the evidence to prove beyond a reasonable doubt that he was a prior offender as defined by § 558.016.2. This point arises from the following facts.

Prior to trial, the State was granted leave to file an amended information charging Defendant as a prior offender. The information alleged that, in November 1999, Defendant pled guilty in New Jersey to possession of marijuana with the intent to distribute. At trial, the State sought to prove Defendant's prior offender status via Ex. 2. This exhibit, which was an exemplified copy of Defendant's New Jersey conviction, was admitted in evidence by the court. According to Ex. 2, Defendant was arrested on March 9, 1999, and originally charged with four offenses. On November 3, 1999, amended charges were filed. Insofar as relevant here, Count II of the amended indictment or accusation charged Defendant with the third-degree crime of "Possession of CDS (Marijuana) w/Intent to Distribute" in violation of § 2C:35–5.[3] That same day, Defendant pled guilty to this offense before the Superior Court of Morris County, New Jersey. On December 23, 1999, Defendant appeared for sentencing. The judgment listed Timothy Donohue as Defendant's attorney at sentencing. On Count II, Defendant was sentenced to a three-year term of supervised probation, plus 56 days at the Morris County Correctional Facility as a condition of probation. The second page of the judgment stated that, "[i]f the offense occurred on or after January 5, 1994 and the sentence is to probation, a fee of up to $25 per month for the probationary term is ordered." Defendant was ordered to pay $10 per month. The prosecutor also asked the judge to take judicial notice of § 2C:43–6, which authorizes a person convicted of a third-degree crime in New Jersey to be sentenced to imprisonment for a period of three to five years. Defense counsel argued that Ex. 2 was insufficient to prove Defendant's prior offender status because: (1) the New Jersey judgment did not state that he was convicted of a felony; (2) no prison sentence was actually imposed; and (3) the trial court could not take judicial notice of the statutes of other states. After reviewing Ex. 2, the court found beyond a reasonable doubt that Defendant was a prior offender.

In Defendant's first point on appeal, he has renewed each argument made to the trial court. In addition, he now argues that Ex. 2 does not reflect Defendant's representation by counsel or waiver of that right. All of Defendant's various arguments posit that there was insufficient proof of his prior offender status. A prior offender is defined as "one who has pleaded guilty to or been found guilty of one felony." § 558.016.2. "A crime is a 'felony' if it is so designated or if the persons convicted thereof may be sentenced to death or imprisonment for a term which is in excess of one year." § 556.016.2. The State alleged that Defendant's 1999 New Jersey conviction qualified as a prior plea of guilty to one felony. It was the State's burden to present sufficient evidence to prove this allegation. *See* § 558.021.1(1)-(2); *State v. Golatt,* 81 S.W.3d 640, 650 (Mo.App.2002). After reviewing Ex. 2, the trial court made the requisite finding that Defendant was a prior offender beyond a reasonable doubt. *See* § 558.021.1(3); *State v. O'Shea,* 141 S.W.3d 498, 500 (Mo.

---

**3.** All references to New Jersey statutes are to N.J. Stat. Ann. (West 2005).

App.2004). Our role is to determine whether there was sufficient evidence for a reasonable trier of fact to have so found. *See State v. Miller*, 153 S.W.3d 333, 336 (Mo.App.2005).

▪▪▪ Defendant first argues that the evidence was insufficient because the New Jersey judgment of conviction does not say that the crime was a felony. We disagree. New Jersey does not use the term "felony" to describe its crimes. Instead, crimes are classified as being of the first, second, third or fourth degree. § 2C:43–1.a(1)–(4). In Count II of the amended indictment or accusation, Defendant was charged with possession of a controlled dangerous substance (marijuana) with intent to distribute. *See* § 2C:35–5.a(1).[4] The judgment recites that Defendant pled guilty to violating subsection b(11) of this statute, which is a crime of the third degree. *See* § 2C:35–5.b(11).[5] The authorized punishment for a crime of the third degree is imprisonment for a term of three to five years. § 2C:43–6.a(3). "Under the plain language of section 556.016.2, convictions may be considered felonies if they are either labeled as felonies or if persons convicted of them may be sentenced to death or imprisonment for a term in excess of one year." *State v. Grubb*, 120 S.W.3d 737, 739 (Mo. banc 2003). Because Defendant's New Jersey conviction meets the latter criteria, it is immaterial that the judgment did not label the conviction as a felony. *Id.* Defendant's first argument has no merit.

Defendant's second argument is that the judgment does not specify the date of the crime, so neither the trial court nor this Court can take judicial notice of the New Jersey statute upon which Defendant's conviction was based. We disagree. Every court in this state is required to take judicial notice of the statutes of other states. § 490.080. The judgment of conviction explicitly states that Defendant pled guilty to a violation of § 2C:35–5.a(1) and .b(11), which was a crime of the third degree. The judgment recites that the amended charges against Defendant were filed on November 11, 1999, and he entered his plea on the same date. Therefore, the trial court could reasonably infer that the conduct giving rise to the charge in Count II occurred prior to November 11, 1999. The judgment also recites that, "[i]f the offense occurred on or after January 5, 1994 and the sentence is to probation, a fee of up to $25 per month for the probationary term is ordered." Defendant was sentenced to probation and ordered to pay $10 per month. Therefore, the trial court could reasonably infer that the conduct giving rise to the charge in Count II occurred after January 4, 1994.[6] We have

---

4. This subsection of the statute states: "a. Except as authorized by P.L.1970, c. 226 (C.24:21–1 et seq.), it shall be unlawful for any person knowingly or purposely: (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog [.]"

5. This subsection of the statute states: "b. Any person who violates subsection a. with respect to ... (11) Marijuana in a quantity of one ounce or more but less than five pounds including any adulterants or dilutants, or hashish in a quantity of five grams or more but less than one pound including any adulterants or dilutants, is guilty of a crime of the third degree except that, notwithstanding the provisions of subsection b. of N.J.S.2C:43–3, a fine of up to $25,000.00 may be imposed [.]"

6. Defendant relies upon *State v. McGowan*, 950 S.W.2d 273 (Mo.App.1997), but that case is factually distinguishable. There, the certified copy of the defendant's Florida conviction recited that he was guilty of "ROBBERY" without specifying the particular statute upon which the defendant's conviction was based. *Id.* at 275. There were a number of different Florida statutes that addressed the crime of robbery. Furthermore,

examined the historical and statutory notes for §§ 2C:35–5, 2C:43–1 and 2C:43–6. Between January 5, 1994 and November 11, 1999, none of these statutes were amended in any way that would be material to Defendant's argument. Consequently, the absence of a specific offense date in the judgment did not prevent the trial court or this Court from taking judicial notice of the proper New Jersey statutes to determine whether Defendant pled guilty in 1999 to a prior felony, as defined by § 556.016.2 and § 558.016.2.[7] Defendant's second argument has no merit.

Defendant's third argument is that his New Jersey conviction could not be a felony because the actual punishment imposed was three years' probation, plus 56 days of time served in jail. Defendant's argument is misdirected. The relevant inquiry is whether Defendant could have been imprisoned for a term in excess of one year upon conviction. § 558.016.2; *Grubb*, 120 S.W.3d at 739. The New Jersey Superior Court could have sentenced Defendant to imprisonment for a term of three to five years. § 2C:43–6. Under New Jersey law, however, a trial court is authorized to consider certain aggravating and mitigating factors when deciding whether a sentence of imprisonment should be imposed or withheld. *See* § 2C:44–1. The fact that, after reviewing these factors, the court sentenced Defendant to probation does not prevent his conviction from being treated as a prior plea of guilty to a felony

pursuant to § 556.016.2 and § 558.016.2. Defendant's third argument has no merit.

■ Finally, Defendant argues that the trial court erred in finding that Defendant was a prior offender because Ex. 2 does not reflect that he was represented by counsel or waived that right. Defendant concedes this argument is not preserved and seeks plain error review. *See* Rule 30.20; *State v. Cooper*, 16 S.W.3d 680, 682 (Mo.App.2000).[8] Plain error review will only be granted when an error so affects a substantial right that a "manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. The defendant bears the burden of proving that a manifest injustice or miscarriage of justice has occurred. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App.2004).

Plain error review involves a two-step analysis. First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." Absent a finding of facial error, this court should decline its discretion to review the claim pursuant to Rule 30.20.

*State v. Ondo*, 232 S.W.3d 622, 626 (Mo. App.2007) (citations omitted). Defendant has failed to establish facial error. The New Jersey judgment expressly recites that Defendant was represented by an at-

---

there was nothing in McGowan's conviction record from which the date of the offense could be inferred. Without such information, the applicable statute could not be ascertained through judicial notice. *Id.* at 275–76. Neither impediment exists in the case at bar.

7. The classification of crimes by degree has remained the same since at least 1987. *See* § 2C:43–1, Historical and Statutory Notes.

During the relevant time frame at issue here, a violation of § 2C:35–5.b(11) was always a crime of the third degree, and the authorized term of imprisonment for such an offense remained unchanged. *See* § 2C:35–5, Historical and Statutory Notes; § 2C:43–6, Historical and Statutory Notes.

8. All references to rules are to Missouri Court Rules (2007).

torney at sentencing. That is sufficient proof to permit the conviction to be used for enhancement purposes. *See State v. Brown,* 476 S.W.2d 519, 523 (Mo.1972); *State v. Shields,* 641 S.W.2d 125, 128–29 (Mo.App.1982); *State v. Goree,* 633 S.W.2d 758, 759 (Mo.App.1982); *State v. Bartz,* 544 S.W.2d 86, 88 (Mo.App.1976). Therefore, we decline to engage in plain error review of Defendant's fourth argument. Point I is denied.

### Point II

█ In Defendant's second point, he contends the trial court abused its discretion in admitting hearsay testimony from Gilbert concerning the telephone call he received from Turner. The following additional facts are relevant to this point.

During the State's case-in-chief, Gilbert was called as a witness. On direct examination, he testified that he received information relevant to his investigation of the Flying J robbery via a telephone call on September 11, 2003. The caller identified herself as Margie Turner and said she was McGuire's sister. She thought she knew who robbed the store. Gilbert was then asked if Turner said why she believed McGuire was involved in the robbery. Defense counsel interposed a hearsay objection. The prosecutor responded that this information was not being offered for the truth of the matter, but to explain how Gilbert's investigation moved from Jasper County to Arizona. The trial court overruled the objection, and Gilbert gave the following testimony:

Q. The Court has indicated you may answer, Detective Gilbert, what did Margie Turner tell you about why she believed her brother, Justin McGuire,

was involved in the Jasper County robbery?

A. She called and told me that her brother had called her from the Joplin area the night of the 18th, prior to the incident, stated that their car was broke down and was wanting him—.

Defense counsel objected to any further information about what McGuire said to Turner as double hearsay. The trial court sustained the objection and prohibited the prosecutor from eliciting any further information about the content of Turner's conversation with McGuire. Gilbert then testified that, after receiving the call from McGuire, Turner had not heard from him again.[9] She agreed to send Gilbert a picture of McGuire. The course of Gilbert's investigation from that point forward has already been summarized above.

On appeal, Defendant contends that the trial court abused its discretion in admitting the one question and answer quoted above. Defendant contends the content of this conversation between Turner and McGuire was inadmissible hearsay that should not have been admitted, or went beyond what was necessary, to explain the subsequent course of Gilbert's investigation. The State argues that the evidence is not hearsay because it was not offered to prove the truth of the matter asserted, but rather to explain subsequent police conduct.

█ A trial court has broad discretion in admitting or excluding evidence. *State v. Madorie,* 156 S.W.3d 351, 355 (Mo. banc 2005). On appeal, this standard of review only compels a reversal of a ruling on the admission of evidence if the trial court clearly abused its discretion. *Id.* An abuse of discretion has occurred when an eviden-

---

**9.** During Turner's telephone call with Gilbert, she had told him that McGuire was shot and killed after committing another armed rob-

bery of a Flying J store in Arizona. This information, however, was not disclosed to the jury at any point during the trial.

tiary ruling is clearly against the logic of the circumstances before the court and is so unreasonable as to indicate a lack of careful consideration. *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005).

"A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006). If the statement is not offered for that purpose, however, it is not hearsay. *State v. Tyra*, 153 S.W.3d 341, 346 (Mo.App.2005). Thus, an out-of-court statement offered to explain subsequent police conduct is not hearsay and, if relevant, is admissible to supply relevant background and continuity. *State v. Deck*, 136 S.W.3d 481, 485 (Mo. banc 2004); *State v. Simmons*, 233 S.W.3d 235, 238 (Mo.App.2007); *State v. Baker*, 23 S.W.3d 702, 715–16 (Mo.App. 2000).

Here, Turner's statement to Gilbert was not offered to prove that McGuire robbed the Flying J store in Joplin. Instead, that testimony was offered to explain the subsequent course of the officer's investigation. As a result of the conversation with Turner, Gilbert obtained a photo of McGuire. He bore a strong resemblance to the surveillance tape images of the man who leaped over the counter during the robbery. Based on other information provided by Turner that was not disclosed to the jury (*see* n. 8, *supra*), Gilbert called the La Paz County Sheriff's Department. Gilbert learned that Defendant was with McGuire when he was killed. The officer obtained a photograph of Defendant. He bore a strong resemblance to the surveillance tape images of the second man involved in the Flying J robbery. That led Gilbert to travel to Arizona and search McGuire's truck. During the search, Gilbert recovered a gray-and-blue stocking

cap with a small design and the word "independent" on it and a plaid shirt. These items of clothing matched that worn by Robber No. 2, who remained in front of the counter during the Joplin robbery.

We hold that the trial court did not err in admitting Gilbert's very limited testimony about his conversation with Turner because the testimony was not hearsay. It supplied background and continuity to Gilbert's testimony and was relevant to explain the course of his investigation.

Assuming *arguendo* that the admission of this testimony was error, Defendant still would not be entitled to have his conviction overturned. On direct appeal, we review the trial court's evidentiary ruling for prejudice, rather than mere error. *See State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005). To warrant reversal, an error must have been so prejudicial that it deprived the defendant of a fair trial. *Id.* In a criminal case involving improperly admitted evidence, the test for prejudice is whether the error was outcome-determinative. *State v. Blakey*, 203 S.W.3d 806, 814 (Mo.App.2006). If so, reversal is required. *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *Id.* It is Defendant's burden to establish this level of prejudice in order to be entitled to a reversal. *See State v. Robinson*, 111 S.W.3d 510, 514 (Mo.App.2003).

Defendant has failed to meet this burden. At trial, Defendant was positively identified by Kilpatrick as Robber No. 2, the man who stayed in front of the counter during the robbery. The surveillance tape

**556**

was admitted in evidence and displayed to the jurors, who were able to make their own judgments about whether Defendant was the person depicted therein. The tape showed that Robber No. 2 was wearing a long-sleeved plaid shirt and a gray stocking cap with a design and some writing on it that included the letter "n". Officer Conley testified that Defendant was with McGuire when he was killed in Arizona and was taken into custody at the scene of the shooting. While Defendant was being interrogated, he admitted that he had been traveling with McGuire from New Jersey to California. During the subsequent search of McGuire's truck, Gilbert recovered a plaid shirt and gray-and-blue stocking cap with a small design and the word "independent" on it. When considered with and balanced against all of this properly admitted evidence, there is no reasonable probability the jury would have acquitted Defendant if the trial court had excluded Turner's statement that McGuire called from Joplin on the 18th and said "their" car was broken down. The statement did not implicate Defendant in the Joplin robbery or identify him as the person who was with McGuire when he called his sister. *See State v. Brooks,* 618 S.W.2d 22, 25–26 (Mo. banc 1981); *cf. State v. Kirkland,* 471 S.W.2d 191, 194 (Mo.1971) (the admission of hearsay testimony was prejudicial error because it was relied on heavily by the state to identify the defendant as the person who committed the crime, and there was little or no other evidence connecting the defendant with the charged offense). Defendant's second point is denied.

While the foregoing discussion disposes of the issues presented by Defendant's appeal, there is a matter which requires further attention. The trial transcript reflects that the court found Defendant to be a prior offender beyond a reasonable doubt. This finding was contemporaneously recorded in a docket entry. Because of this finding, the jury did not assess punishment as a part of its verdict. *See* § 557.036.2(2). The first page of the judgment contains an appropriate check box to memorialize a prior offender finding, but the box was left blank. The failure of the court to note Defendant's prior offender status on the judgment was clearly a clerical error. *State v. Taylor,* 123 S.W.3d 924, 931 (Mo. App.2004). Rule 29.12 authorizes a trial court to correct clerical errors in a judgment resulting from oversight or omission. *State v. Dillard,* 158 S.W.3d 291, 305 (Mo.App.2005). Accordingly, while we affirm Defendant's convictions and sentences, we must remand this case with instructions to the trial court to enter an amended written judgment reflecting that Defendant was found to be a prior offender.

BARNEY, J. and LYNCH, J., concurs.